IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| PENELOPE CLEEK, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Case No. |
| vs. | ) | |
| | ) | |
| TRIPLE T SPECIALTY MEATS, INC., an | ) | **COMPLAINT** |
| Iowa corporation; and FAREWAY | ) | |
| STORES, INC., and Iowa corporation, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Penelope Cleek, by and through her attorney of record, Candy K. Pastrnak, of Pastrnak Law Firm, P.C., complaining of the Defendants, Triple T Specialty Meats, Inc., an Iowa corporation, and Fareway Stores, Inc., an Iowa corporation, and alleges and states as follows:

### PARTIES, JURISDICTION AND VENUE

1.      At all times relevant to this action, the Plaintiff, Penelope Cleek (hereinafter, "Penelope"), has resided in the City of Moline, County of Rock Island, Illinois. Penelope is a citizen of the State of Illinois.

2.      At all times relevant to this action, the Defendant, Triple T Specialty Meats, Inc. (hereinafter, "Triple T"), is and was an Iowa corporation with its principal place of business located at 401 Sherman Avenue, Ackley, Iowa. Triple T is a citizen of the State of Iowa. At all times relevant to this action, Triple T was a manufacturer, distributor, and/or seller of Chicken

1

Salad to customers, including Fareway Stores, Inc. and Penelope, across Iowa, Minnesota, Illinois, Nebraska, and South Dakota.

3. At all times relevant to this action, the Defendant, Fareway Stores, Inc., (hereinafter, "Fareway") is and was an Iowa corporation with its principal place of business located at 2300 8th Street, Boone, Iowa. Fareway is a citizen of the State of Iowa. At all times relevant to this action, Fareway was a manufacturer, distributor, and/or seller of Chicken Salad to customers, including Penelope, across Iowa, Minnesota, Illinois, Nebraska, and South Dakota.

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 USC Section 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs; it is between citizens of different states; and because both Triple T and Fareway have certain minimum contacts with the State of Iowa such that the maintenance of this suit in this division and this district does not offend traditional notions of fair play and substantial justice.

5. Venue in the United States District Court for the Southern District of Iowa is proper pursuant to 28 USC Sections 1391(a)(1) and (2) because both Triple T and Fareway were subject to personal jurisdiction in this judicial district at the time of the commencement of the action, and because a substantial part of the events or omissions giving rise to Penelope's claims and causes of action occurred in this judicial district, as it is the district Triple T and Fareway conduct business.

## FACTS

**The Outbreak**

6. According to the Iowa Department of Health, there were, in early 2018, at least 115 cases of *Salmonella* in Iowa, 2 cases of *Salmonella* in South Dakota, 1 case of *Salmonella* in Minnesota, 1 case of *Salmonella* in Nebraska, and 1 case of *Salmonella* in Illinois, caused by consumption of Chicken Salad products manufactured and sold by Triple T and/or Fareway.

2

7.     On February 14, 2018, the U.S. Department of Agriculture's Food Safety and Inspection Service ("FSIS") issued a public health alert due to concerns about illnesses reported in the State of Iowa linked to the consumption of Fareway's Chicken Salad products.  These products were produced between December 15, 2017 and February 13, 2018.  The alert stated, "The following product is subject to the public health alert: Varying weights of 'Fareway Chicken Salad' sold in plastic deli containers with a Fareway store deli label."  This product was shipped to all Fareway grocery stores in Iowa, Illinois, Minnesota, Nebraska and South Dakota and sold directly to consumers who shopped at Fareway.

8.     The *Salmonella* contamination of the Chicken Salad products was discovered following reports of illness in Iowa.  On February 9, 2018, the Iowa Department of Public Health notified FSIS of an investigation of *Salmonella* illness within the State of Iowa.  FSIS continues to work with public health partners at the Iowa Department of Public Health and Department of Inspections and Appeals on this investigation. Updated information will be provided as it becomes available.

9.     Fareway's Chicken Salad is produced by Triple T in Ackley, Iowa.

10.     Iowa Department of Inspections and Appeals licenses and regulates grocery stores and traced the suspect Chicken Salad back to Triple T's Ackley, Iowa plant.

11.     The Chicken Salad produced by Triple T was distributed to Fareway's stores in 5-pound containers. Fareway repackaged the Chicken Salad received in 5-pound containers into smaller plastic deli containers for sale to consumers as the Chicken Salad products.

12.     On February 21, 2018, FSIS announced that Triple T was recalling approximately 20,630 pounds of ready-to-eat Chicken Salad products that "may be contaminated with *Salmonella* Typhimurium" and which were produced on various dates between January 2, 2018 and February 7, 2018.

3

## The *Salmonella* Bacteria

13.    *Salmonella* is the second most common intestinal infection in the United States. More than 7,000 cases of *Salmonella* were confirmed in 2009; however, the majority of cases go unreported.  The Centers for Disease Control and Prevention estimates that over 1 million people in the U.S. contract *Salmonella* each year, and that an average of 20,000 hospitalizations and almost 400 deaths occur from *Salmonella* poisoning, according to a 2011 report.

14.    *Salmonella* infection usually occurs when a person eats food contaminated with the feces of animals or humans carrying the bacteria.  *Salmonella* outbreaks are commonly associated with eggs, meat and poultry, but these bacteria can also contaminate other foods such as fruits and vegetables. Foods that are most likely to contain *Salmonella* include raw or undercooked eggs, raw milk, contaminated water, and raw or undercooked meats.

15.    Symptoms of *Salmonella* infection, or Salmonellosis, range widely, and are sometimes absent altogether.  The most common symptoms include diarrhea, abdominal cramps, and fever.

16.    Typical symptoms of *Salmonella* infection, as listed below, can appear 6 to 72 hours after eating contaminated food and last for 3 to 7 days without treatment:

- Diarrhea
- Abdominal Cramps
- Fever of 100 F to 102 F
- Bloody diarrhea
- Vomiting
- Headache
- Body Aches

4

17.     Typical symptoms of *Salmonella* poisoning are more likely to occur among young children and people age 65 and older.  Possible complications like Reactive Arthritis are thought to occur in 2 to 15 percent of *Salmonella* patients.  Symptoms include inflammation of the joints, eyes, or reproductive or urinary organs.  On average, symptoms appear 18 days after infection.  Irritable Bowel Syndrome can also be a long-term complication.

18.     *Salmonella* infections generally last 3 to 7 days, and often do not require treatment.  People with severe dehydration may need rehydration through an IV.  Antibiotics are recommended for those at risk of invasive disease, including infants under 3 months old.  Typhoid fever is treated with a 14-day course of antibiotics.   Unfortunately, treatment of *Salmonella* has become more difficult as it has become more resistant to antibiotics.  Finding the right antibiotic for a case of *Salmonella* is crucial to treating this bacterial infection.

**Penelope's Consumption of Fareway Chicken Salad and *Salmonella* Infection**

19.     Penelope purchased Fareway Chicken Salad on or about February 1, 2018, from the Fareway store located at 3705 25th Street, Moline, Illinois. Penelope consumed the product shortly thereafter on February 3 and/or February 4, 2018 as the product was contaminated by *Salmonella,* causing Penelope's infection and related illness, described below.

20.     On Monday, February 5, 2018, Penelope became ill with diarrhea, chills, fever and body aches while at work.

21.     Her symptoms became so severe that she sought treatment with her family physician, Dr. Lisa Kopp on Tuesday, February 6, 2018, who immediately sent her, by ambulance, to the emergency room of Trinity Terrace Park ("Trinity") in Bettendorf.  Unfortunately, Trinity sent Penelope home, prior to receipt of her lab results.

22.     Penelope's symptoms continued and exacerbated, such that she communicated with Dr. Kopp again on Wednesday, February 7, 2018, and was directed to immediately get to the emergency room at Trinity in Rock Island, Illinois.

23.     In the emergency room, Penelope underwent several tests and was given an IV for dehydration.  Her symptoms were so severe that she remained under hospital care in Trinity in Rock Island for 14 days.

24.     Penelope tested positive for *Salmonella* on February 7, 2018 and was notified of those results on February 8, 2018.

25.     During her hospitalization, Penelope was contacted by a physician associated with the Illinois Department of Public Health. Also, after her discharge, a representative of Rock Island County Public Health Department contacted her and discussed her information for purposes of filing a report with the State of Illinois.

26.     Penelope suffered from diarrhea, fever, chills, and lack of appetite for some time after her discharge from Trinity.

## COUNT I
### (Strict Product Liability)

27.     Penelope incorporates the preceding paragraphs of this Complaint, by this reference, as if each of these paragraphs were set forth here in their entirety.

28.     Triple T and Fareway manufactured, distributed, and sold the adulterated Chicken Salad that injured the Penelope.

29.     Triple T and Fareway manufactured a food product, including Chicken Salad, for sale to the public.

6

30.    Food that is contaminated by *Salmonella* is unsafe when put to the use reasonably foreseeable considering the nature of the product. Namely, *Salmonella*-contaminated food is unfit for human consumption.

31.    The Chicken Salad that Penelope purchased and consumed was contaminated with *Salmonella* when it left the control of Triple T and Fareway. Penelope's consumption of the contaminated food caused her to become infected by *Salmonella* and to suffer injuries as a direct and proximate result of that consumption.

32.    Triple T and Fareway are strictly liable to Penelope for the harm proximately caused by the manufacture and sale of an unsafe and defective food product.

## COUNT II
### (Negligence)

33.    Penelope incorporates the preceding paragraphs of this Complaint, by this reference, as if each of these paragraphs were set forth herein in their entirety.

34.    Triple T and Fareway designed, manufactured, distributed, and sold Chicken Salad that was contaminated with *Salmonella,* a deadly pathogen.

35.    Triple T and Fareway owed a duty to all persons who purchased and consumed its product, including Penelope, to manufacture and sell Chicken Salad that was safe to eat, that was not adulterated with deadly pathogens, like *Salmonella,* and that was not in violation of applicable food and safety regulations. Triple T and Fareway breached this duty.

36.    Triple T and Fareway owed a duty to all persons who purchased and consumed its products, including Penelope, to ensure that any representations regarding the certifications its products had undergone prior to distribution and sale were made with reasonable care. Triple T and Fareway breached this duty.

7

37.    Triple T and Fareway had a duty to comply with all statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of their food products, but failed to do so, and were therefore negligent.  Penelope was among the class of persons designed to be protected by these statutes, laws, regulations, safety codes or provisions pertaining to the manufacture, distribution, storage, and sale of similar food products.

38.    Triple T and Fareway breached the duties owed to the ultimate consumers of Chicken Salad by committing the following acts and omissions of negligence:

a.    Failed to adequately maintain or monitor the sanitary conditions of their respective products, premises, equipment and employees, and their respective products, premises, equipment and employees of other entities in the supply chain of the subject Chicken Salad;

b.    Failed to properly operate their respective facilities and equipment in a safe, clean, and sanitary manner;

c.    Failed to apply their respective food safety policies and procedures to ensure the safety and sanitary conditions of their respective food products, premises, and employees;

d.    Failed to apply food safety policies and procedures that met industry standards for the safe and sanitary production of food products, and the safety and sanitary condition of their respective premises and employees;

e.    Failed to prevent the transmission of *Salmonella* to consumers of their Chicken Salad;

f.    Failed to properly train their respective employees and agents how to prevent the transmission of *Salmonella* on their respective premises, from their respective facility or equipment, or in their respective food products;

8

g.    Failed to properly supervise their respective employees and agents to prevent the transmission of *Salmonella* on their respective premises, from their respective facility or equipment, or in their respective food products; and,

h.    Failed to test their Chicken Salad for microbial pathogens, like *Salmonella*.

39.    Triple T and Fareway had a duty to comply with all statutory and regulatory provisions that pertained or applied to the manufacture, distribution, storage, labeling, and sale of their food products.  Triple T and Fareway breached this duty.

40.    Triple T and Fareway owed a duty to Penelope to use reasonable care in the manufacture, distribution, and sale of their food products, to prevent contamination with *Salmonella*.  Triple T and Fareway breached this duty.

41.    Penelope's injuries proximately and directly resulted from the negligence of Triple T and Fareway, and from Triple T and Fareway's violation of statutes, laws, regulations, and safety codes pertaining to the manufacture, distribution, storage, and sale of food.

## COUNT III

### (Breach of Warranty)

42.    Penelope incorporates the preceding paragraphs of this Complaint, by this reference, as if each of these paragraphs were set forth here in their entirety.

43.    By offering Chicken Salad for sale to the public, Triple T and Fareway impliedly warranted that such Chicken Salad was safe to eat, that it was not adulterated with a deadly pathogen, and that the Chicken Salad had been safely prepared under sanitary conditions.

44.    Triple T and Fareway breached the implied warranties about the food they manufactured and sold to Penelope, which was consumed by Penelope causing her injuries and losses.

9

45.     Penelope's injuries proximately and directly resulted from Triple T and Fareway's breach of implied warranties, and Penelope is thus entitled to recover for all actual, consequential, and incidental damages that flow directly and in a foreseeable fashion from these breaches.

## PRAYER FOR RELIEF

WHEREFORE, Penelope prays as follows:

1.     That the Court award Penelope judgment against Triple T and Fareway for damages.

2.     That the Court award all such other sums as shall be determined to fully and fairly compensate Penelope for all general, special, incidental and consequential damages incurred, or to be incurred, by Penelope as the direct and proximate result of the acts and omissions of Triple T and Fareway.

3.     That the Court award Penelope her costs, disbursements and reasonable attorney's fees incurred.

4.     That the Court award Penelope the opportunity to amend or modify the provisions of this Complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served.

5.     That the Court award such other and further relief as it deems necessary and proper in the circumstances.

## JURY TRIAL DEMAND

Penelope demands trial by jury on all issues raised herein.

Dated this 31st day of January, 2020.

Respectfully submitted,
PASTRNAK LAW FIRM, P.C.

By:

Candy K. Pastrnak     AT0006034
313 West Third Street
Davenport, Iowa 52801
Telephone:  563-323-7737
Facsimile: 563-323-7739
Email: ckpastrnak@pastrnak.com
ATTORNEY FOR PLAINTIFF

11